1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                     AT SEATTLE

8

DAMEN S. BACHMAN,                    )
9                                    )
                Petitioner,          )      CASE NO.    C07-136-JCC-JPD
10                                   )
        v.                           )
11                                   )
JEFFREY UTTECHT,                     )      REPORT & RECOMMENDATION
12                                   )
                Respondent.          )
13   _____ )

14

15                                   INTRODUCTION

16          Petitioner Damen Bachman is a Washington state prisoner who is currently serving a 303-

17   month sentence for manslaughter in the first degree, burglary in the first degree, assault in the

18   second degree, and misdemeanor harassment.  He has filed a *pro se* petition for a writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  Respondent has filed an answer, along with the state court

20   record.  Petitioner has not filed a response to the answer.  After considering the parties'

21   submissions and the balance of the record, the Court recommends that the petition be denied with

22   prejudice.

23                                   BACKGROUND

24          No detailed account of the facts in petitioner's case exists in the state court opinions

25   issued in this matter.  However, the following facts appear to be undisputed:  On February 3,

26   2002, petitioner broke into the home of a former friend named Damien Farmer, threatened Farmer

REPORT & RECOMMENDATION
PAGE 1

1  and his girlfriend, and eventually shot Farmer in the face, resulting in his death. (Dkt. #12 at 2).

2  At trial, petitioner admitted to shooting Farmer but claimed that it was an accident. (*Id.*)  The

3  jury found petitioner guilty of manslaughter in the first degree, burglary in the first degree, assault

4  in the second degree, and misdemeanor harassment.  (Dkt. #14, Ex. 1).  The jury also found, in

5  answering a special verdict form,  that petitioner had used a firearm in the commission of these

6  offenses.  (*Id.*)  The trial court sentenced petitioner to a total of 303 months' imprisonment,

7  including enhancements for the use of a firearm.  (*Id.*)

8         Petitioner appealed to the Washington Court of Appeals, challenging only the firearm

9  enhancements.  (Dkt. #14, Ex. 3).  The court affirmed petitioner's conviction and sentence in an

10 unpublished opinion.  (Dkt. #14, Ex. 4).  Petitioner did not file a petition for review with the

11 Washington Supreme Court because that court denied his request for an extension of time.  (*Id.*,

12 Ex. 6).

13        Petitioner later filed a personal restraint petition ("PRP").  (*Id.*, Ex. 8).  The Washington

14 Court of Appeals dismissed the PRP and petitioner sought review by the Washington Supreme

15 Court.  (*Id.*, Ex. 11, 12).  The Washington Supreme Court denied review and a certificate of

16 finality was issued on March 2, 2007.  (*Id.*, Ex. 13, 14).

17        On January 9, 2007, petitioner filed the instant petition for a writ of habeas corpus under

18 28 U.S.C. § 2254.  (Dkt. #1).  After receiving an extension of time, respondent filed an answer,

19 along with the state court record, on April 27, 2007.  (Dkt. #12, 14).  Petitioner has not filed a

20 response to the answer, and the matter is now ready for review.

21                                  <u>GROUNDS FOR RELIEF</u>

22        Petitioner sets forth the following grounds for relief in his habeas petition:

23        1.      Sixth Amendment right to a jury trial was denied under the *Blakely* ruling.
        2.      The petitioner's right to a fair trial was prejudiced by appearing before a
24              jury in restraints (shock belt).

25        3.      Ineffective Assistance of Counsel

26                (i) Counsel failed to object to erroneous firearm jury instructions;

REPORT & RECOMMENDATION
PAGE 2

1          (ii) Counsel failed to argue that the burglary and assault constituted the
same criminal conduct;

2

3          (iii) Counsel failed to request a lesser included instruction on manslaughter
[in the second degree].

4          4.      Cumulative error.

5   (Dkt. #1 at 6-11).

6                         DISCUSSION

7                       Exhaustion

8         At the outset, respondent argues that petitioner has failed to exhaust his second and fourth

9   grounds for relief and that those claims are consequently unreviewable through a petition for a

10   writ of habeas corpus.  The exhaustion requirement has long been recognized as "one of the

11   pillars of federal habeas corpus jurisprudence." *Calderon v. United States Dist. Ct. (Taylor)*, 134

12   F.3d 981, 984 (9th Cir. 1998) (citations omitted).  In order to present a claim to a federal court for

13   review in a habeas corpus petition, a petitioner must first have presented that claim to the state

14   court.  *See* 28 U.S.C. § 2254(b)(1).  Underlying the exhaustion requirement is the principle that,

15   as a matter of comity, state courts must be afforded "the first opportunity to remedy a

16   constitutional violation."  *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981).

17         In addition, a petitioner must not only present the state court with the *first* opportunity to

18   remedy a constitutional violation, but a petitioner must also afford the state courts a *fair*

19   opportunity.  *Picard v. Connor*, 404 U.S. 270 (1971); *Anderson v. Harless*, 459 U.S. 4 (1982).

20   It is not enough that all the facts necessary to support the federal claim were before the state

21   courts or that a somewhat similar state law claim was made.  *Harless*, 459 U.S. at 6.  "[A] claim

22   for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as

23   well as a statement of the facts that entitle the petitioner to relief."  *Gray v. Netherland*, 518 U.S.

24   152, 162-63 (1996).

25         Finally, a petitioner must raise in the state court all claims that can be raised there, even if

26   the state court's review of such claims is purely discretionary.  *See O'Sullivan v. Boerkel*, 526

REPORT & RECOMMENDATION
PAGE 3

U.S. 838, 841-47 (1999).  In other words, a petitioner must invoke one complete round of a state's established appellate review process, including discretionary review in a state court of last resort, before presenting their claims to a federal court in a habeas petition.  *Id.* at 842-44.  Thus, in Washington state, a petitioner must seek discretionary review of a claim by the Washington Supreme Court in order to properly exhaust the claim and later present it in federal court for habeas review.

Regarding petitioner's second claim, related to the use of a shock belt, after reviewing the state court record, the Court finds that petitioner failed to exhaust this issue. While petitioner arguably presented the claim as a matter of federal law to the Washington Court of Appeals, he did not mention any federal case or constitutional provision in his motion for discretionary review to the Washington Supreme Court.  (Dkt. #14, Ex. 12 at 7-8).  Thus, petitioner did not afford the state courts a fair opportunity to resolve his federal claim, and it must be considered unexhausted.[1]  *See Picard v. Connor*, 404 U.S. 270 (1971); *Anderson v. Harless*, 459 U.S. 4 (1982).

Regarding petitioner's fourth claim, related to cumulative error, after reviewing the state court record, the Court also finds that petitioner failed to exhaust this issue by failing to present the claim as a matter of federal law to either the Washington Court of Appeals or the Washington Supreme Court.  (Dkt. #14, Ex. 8 at "Sixth Ground"; Ex. 12 at 12).  Thus, petitioner did not

---

[1]  In addition, petitioner's claim appears unsupported by the factual record.  Petitioner attaches to his habeas petition a document that purports to show that he was forced to wear a shock belt in court and the belt was seen by the jury.  (Dkt. #1, Ex. B).  However, the document submitted by petitioner suggests only that petitioner wore a shock belt when he was transported to his trial and does not shed any light on whether petitioner had to wear the belt during trial or whether it was seen by a jury.  Petitioner also cites the transcript of his testimony at trial as support for this claim.  The Court has reviewed this testimony and it contains no reference whatsoever to petitioner wearing a shock belt.  (Dkt. #14, Ex. 15, Verbatim Report of Proceedings at 543-668).  Thus, even if this claim were exhausted, it appears to lack merit.

REPORT & RECOMMENDATION
PAGE 4

afford the state courts a fair opportunity to resolve his federal claim, and it must be considered unexhausted.

In addition, because more than one year has passed since his conviction became final, and because petitioner already filed one personal restraint petition, petitioner is now procedurally barred from raising either of his unexhausted claims in state court. *See* RCW § 10.73.090; § 10.73.140. When, as here, a petitioner has procedurally defaulted on a claim in state court, the petitioner "may excuse the default and obtain federal review of his constitutional claims only by showing cause and prejudice, or by demonstrating that the failure to consider the claims will result in a 'fundamental miscarriage of justice.'" *See Noltie v. Peterson,* 9 F.3d 802, 806 (9th Cir. 1993) (citing *Coleman v. Thompson,* 501 U.S. 722 (1991)). Petitioner has failed to show, or even argue, that "cause and prejudice" exist excusing his default on the unexhausted claim. Nor has he shown that failure to consider the claims will result in a miscarriage of justice. Accordingly, petitioner's second and fourth grounds for relief are barred from federal habeas review and should be denied.

<u>Standard of Review for Remaining Claims</u>

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication is *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d) (emphasis added). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application"

REPORT & RECOMMENDATION
PAGE 5

clause, a federal habeas court may grant the writ only if the state court identifies the correct

governing legal principle from the Supreme Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case. *Id.* In addition, a habeas corpus petition may be

granted if the state court decision was based on an unreasonable determination of the facts in light

of the evidence presented. *See* 28 U.S.C. § 2254(d)

In *Lockyer v. Andrade,* 538 U.S. 63 (2003), the Supreme Court examined the meaning of

the phrase "unreasonable application of law" and corrected an earlier interpretation by the Ninth

Circuit which had equated the term with the phrase "clear error." The Court explained:

> These two standards, however, are not the same. *The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness. It is not enough that a federal habeas court, in its "independent review of the legal question" is left with a "firm conviction" that the state court was "erroneous."* . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable.

538 U.S. at 68-69 (emphasis added; citations omitted). Thus, the Supreme Court has directed

lower federal courts reviewing habeas petitions to be extremely deferential to decisions by state

courts. A state court's decision may be overturned only if the application is "objectively

unreasonable." 538 U.S. at 69.

Petitioner's First Ground for Relief: Alleged *Blakely* Violation

In his first ground for relief, petitioner argues that his Sixth Amendment right to trial by

jury was violated because jurors in his case were confused by the special verdict forms they were

given to determine whether petitioner had used a firearm in the course of the crimes charged.

Petitioner cites *Blakely v. Washington*, 124 S. Ct. 2531 (2004) as support for this claim and

provides affidavits from two jurors who express concern that they did not know that the special

REPORT & RECOMMENDATION
PAGE 6

verdict could lead to a lengthier sentence for petitioner.  (Dkt. #1, Ex. A).

Petitioner's claim lacks merit for two reasons.  First, his reliance on *Blakely* is misplaced. In *Blakely*, the Supreme Court addressed a provision of the Washington Sentence Reform Act which permitted a judge to impose a sentence above the statutory range upon finding, by a preponderance of the evidence, certain aggravating factors which justified the departure. *Blakely v. Washington*, 124 S. Ct. at 2535.  The trial court relied upon this provision to impose an exceptional sentence which exceeded the top end of the standard range by 37 months. *Id*. The Supreme Court held that this exceptional sentence violated the Sixth Amendment because the facts supporting the exceptional sentence were neither admitted by petitioner nor found by a jury. Thus, *Blakely* did not address petitioner's concern that the jury was misled or confused about the sentencing implications of the special verdict form for firearm enhancements.

Second, it is well established that jurors may not impeach their own verdict. *See Tanner v. United States*, 483 U.S. 107, 117-127 (1987); *Hard v. Burlington N. R.R. Co.,* 870 F.2d 1454, 1460-1461 (9th Cir. 1989).  Accordingly, "[e]vidence concerning a jury's deliberations or a juror's reasoning is inadmissible to impeach a verdict." *United States v. Rohrer,* 708 F.2d 429, 434 (9th Cir. 1983) (finding affidavits regarding jurors' individual or collective thought processes inadmissible under Federal Rule of Evidence 606(b)).  Moreover, jurors "may not be questioned about the deliberative process . . .  nor can such information be considered by the trial or appellate courts." *United States v. Bagnariol,* 665 F.2d 877, 884-85 (9th Cir. 1981).

The exceptions to this rule are set forth in Federal Rule of Evidence 606(b) and generally apply only to outside influences on the jury verdict or clerical mistake.[2]  *See* Federal Rule of

---

[2] Rule 606(b) applies to petitions for habeas corpus. *See* Fed. R. Evid. 1101(e).

REPORT & RECOMMENDATION
PAGE 7

Evidence 606(b).  Here, the affidavits offered by petitioner describe the jurors' concern that they did not know the consequences of their finding that petitioner possessed a firearm during the commission of the crimes charged.  These concerns do not fall into any of the exceptions provided by Rule 606(b).  Accordingly, the state court decision rejecting this claim is not objectively unreasonable and petitioner's first ground for relief should be denied.

<u>Petitioner's Third Ground for Relief: Alleged Ineffective Assistance of Counsel</u>

In his third ground for relief, petitioner raises three sub-claims that his trial counsel was ineffective.  After stating the appropriate standard for review, the Court will address each of petitioner's sub-claims in turn.

Claims of ineffectiveness of counsel are reviewed according to the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).  In order to prevail, petitioner must establish two elements:  First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the first prong of the *Strickland* test, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.*  The test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687, 689.

REPORT & RECOMMENDATION
PAGE 8

In addition, the Supreme Court has stated that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "The object of an ineffective assistance claim is not to grade counsel's performance. If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

A.  Counsel failed to object to erroneous firearm jury instructions.

The factual basis for petitioner's first sub-claim is not set forth in petitioner's habeas petition. (Dkt. #1 at 9). However, in the briefs he filed in state court, petitioner argued that trial counsel should have objected to several jury instructions on the grounds that they contained the phrase "deadly weapon," instead of "firearm." (Dkt. #14, Ex. 12 at 9). Petitioner appears to argue that the discrepancy between these two terms confused and misled the jury. (*Id.*)

Petitioner's assertion that the jury was misled lacks support. Although several instructions referred to "deadly weapon," the jury was also instructed that a firearm qualified as a deadly weapon. (*Id.* at 5). In addition, it is undisputed that petitioner possessed a firearm when he broke into the house of the victim, threatened him, and shot him. Therefore, petitioner fails to show how he was prejudiced by the allegedly confusing instructions, and, consequently, he fails to show that he was prejudiced by counsel's failure to object to the instructions. Thus, the state court decision rejecting this claim is not objectively unreasonable. Petitioner's first sub-claim should therefore be denied.

B. Counsel failed to argue that burglary and assault constituted the same criminal conduct.

Petitioner next argues that counsel was ineffective because counsel failed to argue at sentencing that the burglary and assault convictions encompassed the same "criminal conduct."

REPORT & RECOMMENDATION
PAGE 9

Had he so argued, petitioner contends, counsel would have persuaded the state court to lessen petitioner's "offender score," and thereby reduce his sentence.  (Dkt. #14, Ex. 12 at 10).

Petitioner's contention is belied by the record.  In his sentencing memorandum, counsel argued that "under the facts of this case the Burglary in the First Degree charge . . . would encompass the same 'criminal conduct' as either and both of the Manslaughter in the First Degree charge and/or the Assault in the Second Degree charge."  (Dkt. #14, Ex. 9, Appendix C at 2).  Accordingly, petitioner fails to show either deficient performance or prejudice under *Strickland*.  The state court decision rejecting this claim is not objectively unreasonable, and petitioner's second sub-claim that counsel was ineffective should be denied.

C.  Counsel failed to request a lesser included instruction on second degree manslaughter.

Petitioner was charged with murder in the first degree, but counsel successfully argued that the jury should be given a lesser included instruction on manslaughter in the first degree, which requires proof that a person "*recklessly* causes the death of another."  RCW 9A.32.060(1)(a) (emphasis added).  Counsel's tactic proved successful as the jury found petitioner guilty of manslaughter in the first degree.

Petitioner now argues that counsel should have requested that the jury be given a lesser included instruction on manslaughter in the second degree.  Manslaughter in the second degree requires proof that a person causes a death "by criminal *negligence*."  RCW 9A.32.070(1) (emphasis added).  In order to qualify for such an instruction in Washington, a defendant must show that the evidence supports an inference that the lesser offense was committed.  *See State v. Bowerman*, 115 Wash. 2d 794, 805 (1990).  Thus, petitioner would have had to show that the evidence supported an inference that he acted not recklessly but with criminal negligence.

However, the evidence cannot be said to support such an inference.  It is undisputed that

REPORT & RECOMMENDATION
PAGE 10

petitioner broke into the victim's home, argued with him, threatened him, and that petitioner possessed a gun but his victim did not.  Petitioner testified at trial that the shooting was an accident but the jury rejected this claim in finding petitioner guilty.  To argue that these facts support an inference of criminal negligence defies common sense.  Under the deferential standard of *Strickland*, counsel's decision to request that the jury be instructed on first degree manslaughter, but not second degree manslaughter, does not appear deficient, nor prejudicial to petitioner.  Accordingly, the state court decision rejecting this claim is not objectively unreasonable, and petitioner's third and final sub-claim of ineffective assistance of counsel should be denied.

CONCLUSION

For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be denied with prejudice.  A proposed Order reflecting this recommendation is attached.

DATED this 11th day of July, 2007.

_James P. Donohue_

JAMES P. DONOHUE
United States Magistrate Judge

REPORT & RECOMMENDATION
PAGE 11